Good morning to you. Welcome to the court. Good morning, Your Honor. Please proceed. I hope you're not going to try to cover everything in the argument that is covered in the blue brief. I will not, Your Honor. May it please the court. Fifteen minutes aside, not fifteen hours. You'll have to be a little selective, I think. I agree, Your Honor. With the court's indulgence, I'll begin with dealing with the arguments just in our appeal brief, and I want to begin by explaining why the part of the jury and the trial is the appellant in this case. I'd like to begin with the argument regarding attorney's fees under the contract. The law, and it's not disputed, is that if the contract provides for attorney's fees, the court must award it. It's not discretionary. In this case, the provision governing the attorney's fees is section 10.2. There are multiple copies of this contract throughout the record. The clearest copy of it appears near the beginning at appendix page 37. 10.2 was a provision that was specifically negotiated by the parties. In fact, if you look to the left of section 10.2, you will see Mr. Skidmore's signature on the change that was made to 10.2 to specifically include the words, including reasonable attorney's fees, actually incurred. Wherein lies Judge Erickson's error in disagreeing with you? Judge Erickson's error is in construing 10.2 contrary to the intent of the parties, as testified by Mr. Skidmore, only to apply to a case in which the entire amount of money due was known and discreet before the case began. As Mr. Skidmore testified, and as the parties agree throughout all of the briefing, that under Minnesota law, contracts are construed in order to effectuate the party's intent. What Mr. Skidmore testified when he was asked the questions about the intent of the parties was that he understood that Allen Block would be able to recover his attorney's fees. He was asked, is it correct that, with your understanding of paragraph 10.2, this is appendix 6827, if Allen Block demonstrates that E. Dillon must pay Allen Block royalties on the sales of Stonelock, that Allen Block is also able, under paragraph 10.2, to collect its reasonable attorney's fees that are related in obtaining those royalties. His answer, yeah, you know I mean. I understand what the paragraph says. Unlike the case in county materials, this is a case about the collection of royalties, a basis in which Judge Erickson distinguished the county materials decision. So we have a case in which the language is, in the event of any default, and they admit that there is a default if we prevail on the contract claims. The only question left is, is the thing that's being recovered, attorney's fees, related to the collections of any sums due? Judge Erickson's error, this court's de novo review of the construction of the contract, is based on the language and the intent of the parties. Dillon testified it's their understanding of the intent, they must pay. Post-trial, they argued, because the decision had already come down for county materials, a case not involving a collection of royalties, a case not involving the party's intent, like Mr. Skidmore's, and a case in which that provision was not specifically modified, that the words any sums due must mean a discrete amount only known. Any sums due is not just the collection of royalty payments, although that's what we collected in this case, and it's not the sums due, a known amount. It is any sums due. This court's de novo review of that provision should result in a construction in which Allenbrock, as Mr. Skidmore said, recovers its attorney's fees. And the error by the court below was its view that that meant it had to be an amount that was previously known. The next issue I'd like to address is the 010 Pet. And I think it's going to be a common theme throughout all of the appellate issues today on both sides is standard of review dictates most of these issues for this court. The 010 patent is the only patent where claim construction is on appeal. The 236 does not have a claim construction issue. And this court's de novo review of the 010 patent is responded to by Dillon in a single page where they point to the district court decision and say, Judge Erickson got it right. Unfortunately for Dillon, that's not enough because what Judge Erickson did was import from the figures a requirement that the first support area be planar or normal or flat. And there is nothing in the specification or in the claims or in the file history, since none of the arguments were based on the file history, that suggests a disclaimer by Mr. Grevear or that they were intending to define it in a particular way. The specification support for this element, the element in which Judge Erickson made her mistake, appears at column 3, lines 55. And what it says is the uppermost surface of all forms of the block, 10, 11, and 12, is divided into 2 distinct areas, designated respectively 20A and 20B, with a vertical dividing shoulder, 20C, arranged there between. What is required on the top of the block are 3 things. A first support area, as appears in claim 1, and a second top surface and a vertically extending shoulder, which is located therewith, the second top surface. The error that the court made and the error in Dillon's argument is a suggestion that the top of the block must be flat. The explicit language of the claims prove that's not true. 1A says that there are 4 surfaces, bottom, top, rear, side, and frontal. 1B says which one of those must be generally planar. And the top is not one of them. It's the bottom, the rear, and the side surfaces. Counsel, doesn't 1B also say that the bottom, rear, and side surfaces have to be arranged generally normal to one another? Yes, and that's true. And it wasn't one of the issues that was the basis of non-infringement, because what that means is they appear at right angles to each other. Right, but the stone block blocks, at least all of the pictures from the patent itself and the figures used by the expert, they're really far from right angles. So are you telling me, while I may be correct that there's a really big problem here, it wasn't raised below? It's the bottom to the side, if that makes sense. Even though there's an angle in that the sides aren't at right angles to the back, that where they appear and attach to the bottom is at right angle. And in fact, if you look at the figures that- Hold it, just calm down. Answer my question. Was this issue raised below? It was. It was raised below. It's not raised on appeal. It wasn't the basis for the district court's decision. It wasn't the basis for a claim construction. It was an argument made below. If you look at figure three in the 010 patent, you will see an embodiment that has tapered sides. In fact, there are dependent claims that deal with a tapered side. Figure three is a top-down view of the block. So if you're looking at it, the front is at the bottom, and it tapers towards the back. The tapering isn't what generally normal is talking about. It's talking about the angle between the sides and the bottom. The angle between the sides and the bottom wouldn't be generally normal either because of the tapering. No, I would disagree, Your Honor. At the point at which the side reaches the bottom, that's still at a right angle. It's still generally- Now, you indicated that you wanted to save seven minutes for rebuttal. I do. What about there? I'd like to make one more comment, Your Honor. The 236 patent is not a question on the appeal of a claim construction. That's not the issue for this court. The issue for this court is the application of the evidence for infringement. Because the jury found in Allen Block's favor, based on the undisputed claim construction, all that is required to reverse the district court's decision to substitute her own view of the evidence is evidence that would have supported the jury's verdict. The only evidence on infringement was the evidence of the expert, Al DeRay, on behalf of the plaintiff. He provided not just some evidence that the jury could rely on, on an element-by-element basis, but the only evidence. And the district court erred in not applying the correct standard to a jury verdict. Because there was substantial, in fact, the only evidence upon which a jury could find, the district court should not have substituted its judgment. It wasn't a question of claim construction. It was a question of a misapplication of the evidence. Thank you, Your Honor. Mr. Durrett. Good morning, Your Honor. Good morning. It pleases the court. I take your admonition seriously as well and will address, if I might, first the issues that we appealed on of the contract interpretation issues related to producer's improvement and technology. And I'd like to talk about producer's improvement first. We contend that in order to be a producer's improvement, there needs to be a standard that the trial judge should have enunciated that is consistently applied in all of the cases that we cited. We cited four circuit court cases from the 2nd, 6th, 7th, and 10th, District Court of New Hampshire and the Supreme Court of Michigan. And every one of those courts who had an opportunity to address a similar provision where a licensing agreement related to the licensing of a patented technology and expertise and know-how and similar language to what's in this case, those courts all looked at that and said it is not a blanket provision that puts a tightrope around a person's mind and requires them to assign anything that they create. They set specific standards, particularly this diner sales case, where you have to have an original object, you have to have an addition to it that becomes an integral part of it that enables it to perform its function better but that preserves its essential character and its integrity. Where's the error? The error is that she did not interpret producer's improvement in that way. She allowed the jury to conclude that it was anything. In our view, she should have interpreted it by saying that. Unless you find that the producer's improvement... Was there some dispute about the jury instruction? Not the instruction that was given but one that we asked to be given and our position on summary judgment. We believe, Your Honor, that we should have been... So she rejected your proffered jury instruction? She rejected the interpretation that we asked her to give on producer's improvement, yes. And that was because there was testimony in the trial about what the parties understood this term to mean and that it went beyond the confidential propriety technology and included other advancements as well. Isn't that the way that... That's the way I read the trial testimony. There was factual evidence introduced about conversations that had taken place and as a result, the judge gave a jury instruction which allowed the jury to determine whether in fact the producer's improvement had been violated. Respectfully, Judge O'Grady, the testimony that I think you're remembering and the language that you're remembering is with respect to the definition of technology. My recollection of the record is that there wasn't any such testimony about producer's improvement. There was testimony about conversations between Mr. Bott and Mr. Grevier when Mr. Bott was a producer, his licensing agreement, and both of them testified about what they understood technology to be. One of them might have testified about producer's improvement being that they were entitled to it because they felt that their technology had been used in creating the block. And that leads me to make two observations. One is that the primary concentration in the brief in rebuttal to our position is that their technology was used in creating Stonelock but the only thing the jury was asked to decide is whether the Stonelock block itself was a producer's improvement. And our position simply is that the Stonelock block did not embody the essential proprietary patented feature of Allen Block which made it unique, which is the raised front shoulder. And that had to be there and some improvement to that which allowed it to perform its functions better. May I move now to the decision of Judge Erickson to award the 470 patent to Allen Block based upon the finding the jury made that the block itself was a producer's improvement. And our position is, and it's pretty well articulated, by the exchange between Judge Erickson and Mr. Swebert at our Rule 50 motion stage when we made a Rule 50 motion that she should rule at the conclusion of Allen Block's case that the 470 patent was not a producer's improvement and therefore the jury could not find that and it could not belong to Allen Block. And she said to Mr. Swebert, as he was arguing, there's no evidence to support that. And he agreed. And he said that there would have to be a mini trial and there would have to be a showing that the claims of the 470 read on the Stonelock block. There was no evidence. There was no experts, no testimony, nothing. But in Judge Erickson's opinion, she says that the evidence was that the Stonelock block, the 470 patent covered the Stonelock block. But there was no such evidence. I'd like to turn briefly to technology, if I might. I think it's important... Would I be close to pointing in the right direction to suggest that the reason this dispute goes on and so many different contentions are made on appeal has to do heavily with the patent that was ordered, transferred to the plaintiff? Judge Michel, I can't speak for Allen Block. I can only speak for Dylan and that, yes, that is a very important consideration for Dylan. Go ahead. I think it's important to focus and understand precisely what the claim is of their technology that Dylan used. First of all, we believe that if you look at the contract as a whole and not, Judge O'Grady, just at the language in paragraph 3.1, that does lend some support to the argument that Allen Block makes. But we all know that the law is you have to read the contract as a whole. In paragraph 8.3 and 8.6, both address the proprietary nature of the technology. Those paragraphs mandate Dylan to protect that. Well, if technology is deemed to be anything and everything, that Dylan might have received from Allen Block, even though it's in the public arena, on the Internet, and available to everyone else in the world, Dylan could not fulfill the mandates of those paragraphs. So you have to harmonize them. And the only way to harmonize them is to read them together, make sense out of them, and that means that technology must have proprietary characteristics. What was used here by Dylan along the way, and I must emphasize, and this is a critically important point, used after Stonelock had already been reduced to engineered drawings, those drawings had already been sent to Columbia Machine, Columbia Machine had already given a quote for the cost of making molds, and the drawings had gone to the patent attorney. All of that took place before Dylan used anything that Allen Block is alleging was its technology. And Allen Block has conceded that Stonelock could have been manufactured without using their technology. So what is this case all about with regard to technology? Dylan sawed off the front face and the wings of an Allen Block that anybody could have purchased at the store, leaving nothing more than a trapezoidal shape of concrete. And it glued that to the back of its face in order to make a model. Secondly, it took a drawing that was not marked confidential, in spite of the fact that Allen Block mistakenly says so in their papers. The drawing that was used was not marked confidential. Dylan only used the dimensions of that drawing, nothing proprietary to Allen Block, the shape of a trapezoid. Mr. Block admitted on cross-examination that you could buy a block at the store, apply calipers to it, and you could get that same picture within an eighth of an inch. It was used only to illustrate the location. And the final thing was a mold frame. A mold frame that every third-party witness, with no dog in this fight, if you will, said is generic. A frame is a frame is a frame. You use them to make anything. And in fact, the frames for the major number of blocks were made originally. These frames could have been made originally. Dylan only saved $4,000 by using this frame, and it was only used by Columbia to locate the bolt holes. That's the technology. Even if that comes within the definition of technology, its use was not a material breach of the contract. I'm nearing the five minutes that I indicated I would like to save for rebuttal, so with the court's permission, I'll stop now. Thank you. Mr. Schwiebert, rebuttal. As I think I already foreshadowed for the court, the issues in the cross-appeal are all about standard of review. Dylan appeals a denial of summary judgment, and in that summary judgment denial, the district court found the contract terms ambiguous and allowed them to go to the jury. Now, keep in mind, this case has already been here before. The district court granted a preliminary injunction. We came up on appeal, Dylan's appeal of preliminary injunction, in which the court construed the contract in Allen Block's favor. This court was not so shocked with that construction that it found an error in it and affirmed. Then the district court, before the trial, says, well, there's some ambiguity in it. I'll let it go to the jury. What Dylan is asking for you to decide is, there was no ambiguity such that it could go to the jury, and it is only their interpretation, which is directly contrary to both this court's prior affirmance of the preliminary injunction and the district court's order. All that is required for Allen Block to prevail on Dylan's appeal is that its construction is possible, because then ambiguity exists and it goes to the jury. I will suggest that Allen Block is correct in the interpretation, because what Dylan does is a distortion of the contract. 3.1 defines technology. It's something the parties agreed to. But here's Dylan's argument. 3.1 means proprietary. Proprietary means right to exclude, means patented, means even though the block's in the public, we can't use it. The problem with that syllogism is the block is defined as part of the technology. They admit they used our block. It's the first part of the defined technology. Their syllogism gets them to a point where the expressed language is no longer covered. Moreover, the definition of proprietary is in dispute. Mr. Skidmore testified when he was asked the question, his understanding of proprietary meant owned by Allen Block. If that's true, then there's no dispute that they used things that were owned by Allen Block. Once the court decides that there was at least an argument in support of the contract in Allen Block's favor, the summary judgment denial cannot be ruled on. And the question is, was there any evidence before the jury in which the jury could decide? There was no objection to the special verdict form. There was no objection to the jury instruction. The jury was not asked to decide what does the contract mean and then decide did they in fact breach the contract. They were only asked one question. So you as a review in court don't know. Now, Dillon suggested what they think the jury did, but there's no evidence of that. If the jury decided that producer's improvement, betterment, modification, and improvement to the block or the technology is interpreted as Dillon intended, there's still evidence that would have supported that verdict. If they decided that it meant what Allen Block thought it meant, there's no dispute that there's evidence that supports it. The problem that Dillon has... Why did the judge require Dillon to assign the 470 patent? That's a very unusual remedy. She did it in equity, not specifically based on producer's improvement. And the reason why she did it is this. They could not have gotten the application that resulted in the patent if they had not breached the contract. Their patent attorney testifies the application is on the commercial embodiment which is the result of the breach of contract. So you can use analogies from other parts of the law, but they are left with a patent right, a right to exclude the public that they only obtained because they breached the contract. Well, but the court, it seems to me, made an error in that... Or at least it appears as such, and I'm happy to hear your response, but she seemed to be of the belief that the patent claims covered nothing but the Stonelock Block. And if the patent was limited to the Stonelock Block, I'd be less troubled by it, but it seems to me the claims are broader than simply the Stonelock Block and that while your client may have proprietary rights over the Stonelock Block and that particular design, I find it difficult to conclude that you ought to get everything else, too. The contract provides that any modification, betterment, improvement of the block or the technology is owned by analog. There is no dispute in the evidence in the record that the patent application, the resulting patent, is a result of their betterment, modification or improvement of our technology, specifically a block that got modified. So under the producer's improvement... Are you suggesting the claim is limited to the Stonelock Block? The only evidence in the record on that came up in the motion to eliminate stage where we sought to exclude the 470 patent as evidence. And Dillon stood in front of the court and said, the Stonelock Block is covered by the 470 patent. And they argued to the court successfully in overcoming my motion to eliminate that it's covered by that patent. I don't disagree, but that doesn't answer my question. Is the Stonelock Block the only thing covered by the 470 patent? I'm not aware of any other block on the marketplace that's covered by the 470. I know based on their representation to the court that the Stonelock Block is covered. I know from the patent attorney who filed the application, his intention was to cover that. What the court decided in equity, which is an abusive discretion standard, is it's not right for them to end up with a patent right when any betterment, improvement or modification is owned by us. And the only way they get to this property right, this thing of value, is by breaching the contract. The court's decision in equity was to fully compensate Allen Block. E. Dillon shouldn't be left with this thing of value, which they obtained only by breaching the contract. And the contract specifically says... I guess I don't disagree with you to the extent that the thing that they're left with would solely be the portion that related to the breach of contract. But if the patent scope is much broader than a single commercial embodiment, I don't see the justification in equity or otherwise to give you all of it. I would suggest to the court that my interpretation of that contract is that it's relatively narrow. Understanding that's adverse to my client's interest, which has now been awarded that patent. But the way the claims were drafted and narrowed during the prosecution, it is extremely narrow to the thing that they invented by breaching the contract. All right. Time has expired. Thank you. Mr. Durrett. If I might pick up on your question, Judge Moore. That is essentially our argument, that there is no evidence in the record of the relationship between the block, which was determined to be a producer's improvement, and the patent. There's also nothing in the record where you objected to the awarding of the 470 patent based on the fact that it included proprietary technology that you had learned outside of anything gained through working with Alan Block. Is that right? You mean awarding? Was there an argument made that the judge couldn't award the equitable relief because the 470 patent contained proprietary information that was learned outside of the contractual agreement with Alan Block? Your Honor, I don't think that was exactly our argument. Our argument, I believe, was, number one,  there had to be a showing that there was not an adequate remedy at law. And there was no such showing. There was no evidence that it wasn't. And Alan Block was fully compensated for all the sales of the Stonewall Block. They got the Stonewall Block. They got the right to manufacture it. We were enjoined for manufacturing, so they got full control. What I saw was the argument over the producer's improvement. And it was at that level, but not at a claims level. At the motions after trial level, our argument was that, as Mr. Schwiebert acknowledged also in his presentation to the court, in order to get the patent, they would have to show that the claims read on the block. And there is no evidence that they do. And they got the block. But the patent, there's no evidence that that is the only product covered by the patent. And that, in our view, is necessary in order to make it an award. But do you agree that the Stonewall Block is covered by the 470 patent? It is a commercial embodiment of the 470 patent. So is your argument, then, that lots of other things also are? Our argument, Your Honor, is that there's no evidence one way or the other on that point. None whatsoever? So that point being other blocks being covered by 470? At the moment, there is nothing in the marketplace that I am aware of, as Mr. Schwiebert says, that is covered by the 470 patent. The essence of our argument is that if Allen Block wanted to claim that the patent was a producer's improvement, they could have. And they could have put that evidence on, and they could have put on testimony, and they could have shown it. But they didn't. There is no evidence addressing the patent whatsoever. I'd like to comment briefly on the issues that Mr. Schwiebert addressed at the opening of his remarks. First, on the attorney's fees. The insertion of the words, actually incurred, which is the only difference between this attorney fee provision and the one interpreted by Judge Sebas in Wisconsin and by the Seventh Circuit. As the Seventh Circuit put it- No, this is your rebuttal on your cross-appeal. I thought the attorney's fees issue was their appealed issue. It is their appeal. Is my rebuttal limited to my cross-appeal? That's generally the rule, yes. OK. I'm sorry. I apologize. That's OK. OK. With respect to technology, I hope you will recall, which is our appeal, the definition of technology, that in Alan Block's brief and in Mr. Schwiebert's oral argument, the brief never addresses, and he never addresses, the reconciliation between the language in 8.3, 8.6, and paragraph 14, which says the technology is unique. Those two paragraphs specifically address the proprietary nature of the technology. And you have to read the contract as a whole. It imposes obligations on Dillon. Those two paragraphs do. Mr. Grevear acknowledged on cross-examination that centuries-old mathematical formulas might be covered by his definition of technology. No proper construction of a contract that deals with a patent license and technology associated with it should be allowed to include anything that is in the public marketplace. So we feel very strongly that that definition, that this court needs to take the opportunity to enunciate that, as well as enunciate standards for producer's improvement consistent with every other court that has addressed that issue. All right. Thank you. We'll take the appeal under advisement.